```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
                        FORT WORTH DIVISION

UNITED STATES OF AMERICA         )    4:17-CR-029
                                 )
v.                               )    Sentencing
                                 )
KRISTOPHER RAY FACIO             )    August 14, 2017
```

**BEFORE THE HONORABLE REED C. O'CONNOR**
*United States District Judge*
*In Fort Worth, Texas*

| | |
|---|---|
| **FOR THE GOVERNMENT:** | **MS. AISHA SALEEM**<br>US Attorney's Office<br>1100 Commerce<br>3rd Floor<br>Dallas, TX 75242<br>214/659-8600<br>Fax: 214/767-2846<br>aisha.saleem@usdoj.gov |
| **FOR THE DEFENDANT:** | **MR. MICHAEL A. LEHMANN**<br>Federal Public Defender<br>819 Taylor Street<br>Room 9A10<br>Fort Worth, TX 76102<br>817/978-2753<br>Fax: 817/978-2757<br>michael_lehmann@fd.org |
| **COURT REPORTER:** | **MR. DENVER B. RODEN, RMR**<br>*United States Court Reporter*<br>5124 Breezewind Lane<br>Fort Worth, Texas  76123<br>*drodenrmr@sbcglobal.net*<br>Phone:  (214) 753-2298 |

   The above styled and numbered cause was reported by computerized stenography and produced by computer.

1         (August 14, 2017.)
2             **THE COURT**:  All right.  We are here now in case
3    number 4:17-CR-029, the United States versus
4    Kristopher Ray Facio.  Ms. Saleem here and Mr. Lehmann here.
5             **THE COURT**:  Would you state your name for the record.
6             **THE DEFENDANT**:  Kristopher Ray Facio.
7             **THE COURT**:  Very good.  We are here for purposes of
8    your sentencing.
9             The Government -- Counsel, did you and the -- Did you
10   and your client receive in a timely manner a copy of the
11   Presentence Investigation Report and the Addendum.
12            **MR. LEHMANN**:  Yes, Your Honor.
13            **THE COURT**:  Did the Government receive these timely?
14            **MS. SALEEM**:  We did, Your Honor.
15            **THE COURT**:  All right. So you have -- you have filed
16   two objections.  One is to the upward departure which I will
17   hear argument on that before I rule on that but then the
18   second objection is to whether your client should receive a
19   three level reduction for the attempt.
20            Do you want to address that?
21            **MR. LEHMANN**:  Yes, Your Honor. Thank you. I believe
22   the addendum addressed this one issue on point.  There had
23   seemed to be based on the facts prior to the Addendum an open
24   question as to whether or not some conduct had actually
25   occurred and subsequent to filing the objections the Probation

1  Department followed up with the investigators in this case and
2  I believe clarified the issue thereby rendering the objection
3  moot.
4       **THE COURT**:  Okay.  Very good.  Then I will adopt the
5  fact findings contained in those documents.  I will adopt the
6  probation officer's conclusions as the appropriate Guideline
7  calculations and determine that they be as follows:
8       A total offense level of 35.
9       A Criminal History Category of V.
10      An imprisonment range of between 262 and 327 months.
11      A supervised release range of 5 to life.
12      And a fine range of between $40,000 to $250,000.
13      Okay.  So now I'll turn the floor over to you,
14 Ms. Saleem.
15      **MS. SALEEM**:  Your Honor, we filed a Motion For Upward
16 Variance and I actually have testimony to put on in connection
17 with that motion, if we may at this time.
18      **THE COURT**:  All right.
19      **MS. SALEEM**:  We would call Christopher Thompson.
20      **THE COURT**:  Would you raise your hand to be sworn,
21 please.
22     <u>**CHRISTOPHER THOMPSON, GOVERNMENT WITNESS,**</u> was sworn
23                    <u>**DIRECT EXAMINATION**</u>
24   (Witness sworn.)
25 **BY MS. SALEEM**:

```
1   Q.  Could you please state your name for the record and what
2   you do for a living?
3   A.  My name is Christopher Thompson.  I'm a Special Agent with
4   the FBI assigned to a child exploitation task force.
5   Q.  Are you familiar with the investigation involving
6   Kristopher Ray Facio?
7   A.  I am.
8   Q.  During the course of your investigation did you determine
9   that Mr. Facio had in fact been making sexually explicit
10  comments and contact with a number of minors in addition to
11  MV1 charged in this case?
12  A.  Yes, I have.
13  Q.  Can you describe what you found?
14  A.  Yes.  Mr. Facio, through his admissions as well as through
15  the digital evidence which was recovered as part of the
16  investigation, it was clear that Mr. Facio had been
17  communicating with dozens, if not hundreds, of people online
18  over a very short period of time, a matter of 4 to 6 weeks and
19  what I observed on the telephone itself.
20          These conversations were almost exclusively of a lewd
21  nature.  I will choose my words carefully; I know there are
22  some minors in the courtroom.  These were very lewd
23  conversations.  Generally, it would be depicted by what I
24  would describe as a spamming of anonymous people, if you will.
25  There would be people who would be identified online.
```

1  Mr. Facio, even not knowing them, would reach out to them via
2  some sort of online message, essentially identify himself, ask
3  if they would mind receiving a lewd picture of him, and then
4  he would follow up with a picture of his genitals.
5  Q. In addition to that type of repeated conduct did you find
6  that there were a number of messages from individuals who
7  responded saying they were minors and they were not -- they
8  did not want to receive these type of pictures?
9  A. Yes. Many of the messages that I observed were to minors,
10 whether intentionally or accidently I don't know, but the
11 minors did respond, identify, say, I am a minor, here's my
12 age, or something like: I don't want to see that. Please
13 don't do that anymore. And about half the time Mr. Facio
14 would try to continue the conversation and often would send
15 another picture even though they asked him not to.
16 Q. And in particular, this investigation started out with a
17 contact from Erath County by a father who reported to the
18 police contact with Mr. Facio. Is that your understanding?
19 A. Yes.
20 Q. Can you describe the concerns that arose with respect to
21 Mr. Facio's contact with a child in Erath County and what
22 happened with the dad?
23 A. Yes. The child in Erath County, I believe she was a 12
24 year old minor. She had been contacted in a way I just
25 described by Mr. Facio in an online communication. This minor

1  then reported it to her father. Her father then took the
2  device and started responding in this online chat with
3  Mr. Facio saying: I'm an adult. You are speaking now to --
4  you were speaking to my daughter. This is inappropriate. We
5  are going to report it to the police. Mr. Facio then
6  continued to engage in that conversation knowing now he was
7  speaking with the father of this minor and was essentially
8  boasting, in some ways almost challenging this father to
9  accuse him of something. For example, he said something to
10 the effect of: Well, she likes the pictures that I sent; and
11 then Mr. Facio also in a subsequent confession had stated that
12 he had the ability in this online messaging application that
13 he was using, he had the ability to withdraw or retract images
14 or text messages that might have been sent on a previous date,
15 so he would say -- he would do that pretty regularly and in
16 this case he did that, he withdrew whatever image that he had
17 sent to the minor and then challenged the adult later on to
18 say, Well, you need to prove that I sent it because it's not
19 there anymore.
20 Q. In addition to Mr. Facio controlling what happened to the
21 images that he sent did you also find some specific comments
22 by Mr. Facio with respect to just some callousness on his part
23 for some of the children he was speaking with?
24 A. Yes. Often the -- if the recipients of his unsolicited
25 messages and pictures would say please don't do that anymore

1    he would often just send them again anyway simply in the
2    attempt to try to get somebody to respond to him.  There was
3    one in picture where he was chatting with a girl.  I believe
4    she was 12 or 14 years old.  He sent the picture of his penis
5    to her.  She responded that she didn't want to see that, she
6    had been raped they age of 7, and was still disturbed by it.
7    He immediately responded to that post by saying:  Well, have
8    you seen a penis since then.
9    Q.  In addition to that you've also reviewed the
10   communications between Mr. Facio and Minor Victim 1 who is the
11   minor victim in this particular case and are you aware that
12   that that minor is 11 years old?
13   A.  Yes.  She was 11 years old at the time of the
14   communication.
15   Q.  Now, did you see indications of grooming in the
16   communications with this minor?
17   A.  Yes, I did.
18   Q.  Can you explain what you saw?
19   A.  Yes.  This conversation, it went on for a period of time.
20   It appeared to be about two to three weeks of time, but
21   there's a lot of communication in that.  In the early parts of
22   the conversation Mr. Facio had sent an image of himself as I
23   described previously.  The minor girl responded that she
24   didn't like that and she didn't want to see that anymore.  The
25   conversation continued.  They talked about television show for

1   a little while and then Mr. Facio sent another picture of his
2   penis and she responded I don't want to see that, stop doing
3   that. But the conversation kept going on. As the
4   conversation developed, it got into more of a sexual nature of
5   a conversation which is classic grooming.
6   Q. Now, finally, with respect to Mr. Facio's attempts to get
7   images of the minor, I realize Defense is saying that the
8   objection that they've raised is moot but were you able to
9   corroborate from the communication in its entirety as well as
10  the sheets that are visible in the pictures sent by MV1 that
11  this does appear to be graphic images of his MV1?
12  A. Yes, I did.
13  Q. Her face is not visible or anything to that extent?
14  A. Not in the graphic images, no.
15  Q. Now, in addition to having to go through I guess a police
16  investigation with respect to the communications between
17  Mr. Facio and Minor Victim 1, did Minor Victim 1 also have to
18  go through a forensic interview?
19  A. Yes.
20  Q. And go through the embarrassment of talking about some
21  very private, explicit conversations?
22  A. Yes.
23  Q. And you are aware that the minor did deny initially
24  sending those images. Is that right?
25  A. Yes.

1  Q.  But the objective evidence would support, in fact, a
2  finding that those images are of her?
3  A.  Yes.
4  Q.  Is there anything else you wanted to add with respect to
5  Mr. Facio's conduct as it relates to an upward departure?
6  A.  Just --
7  Q.  -- or variance, I should say.
8  A.  Yes.  Just that Mr. Facio in his discussions with law
9  enforcement has admitted that he is unable to control himself
10 and I think his actions have verified that.  He has been to
11 prison for an offense like this.  He violated the terms of his
12 deferred adjudication and had to be incarcerated for another
13 sexual offense.  In less than two years out of prison he gets
14 caught doing it again, in my own personal observation, on one
15 device a very large number of minor children.  I believe him
16 to be a serial offender who probably can't control himself, as
17 he said.
18 Q.  And you did mention Mr. Facio, in fact, said he was
19 addicted to this type of behavior?
20 A.  Yes.
21         **MS. SALEEM:**  I'll pass the witness.
22                     **CROSS-EXAMINATION**
23 **BY MR. LEHMANN:**
24 Q.  Agent Thompson, everything that you've testified here
25 today is included in your investigative materials.  Is that

1  right?
2  A.  Yes, I believe so.
3  Q.  And there was no evidence of sexual abuse.  Is that right?
4  A.  Could you be more specific?
5  Q.  You would agree that in your investigation you did not
6  learn of any sexual abuse on the part of Mr. Facio?
7  A.  Of him committing a sexual abuse?
8  Q.  That's correct.
9  A.  No, I don't know that.
10          MR. LEHMANN:  No further questions, Your Honor.
11          THE COURT:  You may step town.
12          THE WITNESS:  Thank you.
13          MS. SALEEM:  Your Honor, the Government rests with
14  respect to testimony.  MV1's mother is here.  I'm not sure if
15  she still would like to give a statement to the Court, but can
16  I check very briefly, please?
17          THE COURT:  Yes.
18      (Witness sworn.)
19          THE COURT:  I would be pleased to hear anything you
20  have to say.
21          THE WITNESS:  Yes.  My name is XXXXXXXXXX and I just
22  want to say that to me if he -- for my child I want her to be
23  safe but I also want the other children to be safe out there.
24  That's why I'm here today and I do believe that once you do it
25  and you continue to do it, he is going to continue to do it

1  further and further and it's just going to get worse and I
2  don't feel that he should be out, you know, of prison or jail
3  for a very, very long time.  Because me as a mother, I want to
4  protect my kid and if something else was to ever happen to
5  her, I wouldn't know what to do.  I just thought I would say
6  something like that, for myself and for my daughter and other
7  children out there and I'm sure that other parents like that
8  that feel the same way.
9        **THE COURT**:  Thank you.
10       **THE WITNESS**:  Thank you.
11       **MS. SALEEM**:  Just argument at this point, Your Honor.
12  Your Honor, we are asking for an upward variance because we
13  are talking about an individual who not only had a prior
14  conviction for the same type of conduct but even while he was
15  waiting disposition of that first case in 2012 he was back in
16  jail doing the very same type of conduct that got him into
17  trouble.  He was again out soliciting for minors and while he
18  was in jail he told two girls that he wanted to engage in more
19  than friendship with them.
20       Then we also have an individual who once he was given
21  probation could not live out probation but very soon after he
22  was placed on probation he violates his conditions.
23       And then he's on parole and what does he do, he is
24  back to sexually explicit conduct where he is out on parole
25  where he is engaging in inappropriate conduct out in public.

1  Now we have two years later a man who has not stopped
2  soliciting minors who was required to register as a sex
3  offender at the same time that he is committing these offenses
4  and not keeping that registration up-to-date as he should and
5  now he is facing state charges with respect to that.
6        But on top of all of that, he has gone to the point
7  of soliciting so many minors and engaging in such
8  inappropriate conduct that we know that this is a repeat
9  offender.  And what we are asking for an upward departure,
10 what we are asking for is less and year's worth of time for at
11 least the 20 victims that Special Agent Thompson was able to
12 identify from the phone communications that occurred over just
13 the one month period that the defendant was communicating
14 using his phone.  If we look at the years that he was doing
15 this, at least the two years that he was out, it's potential
16 that he had hundreds and hundreds of victims.  But we are
17 asking for an upward variance to 480 months because we believe
18 that it is appropriate given the full extent of the
19 defendant's conduct.
20       Thank you.
21       **MR. LEHMANN:**  Your Honor, we would can ask the Court
22 to consider a sentence at the bottom of the guidelines.  We
23 are aware of the Government's arguments in this case urging
24 the Court for an upward departure.
25       I would like to begin by stating that Mr. Facio has

1  completed guilty, he has accepted responsibility, and he as
2  acknowledged the harm that he has done to the minor victim in
3  this case and others involved.  These are very difficult
4  cases.  I think part of what we do here is in applying the law
5  we have compartmentalize some of the moral repugnance that we
6  deal with in these cases and look at the law for what it is
7  and how it applies in these type of cases.
8            I would, with that in mind, focus on the fact that
9  Mr. Facio is being hit with the full weight of the law here.
10 The statute itself is very harsh.  It provides for a mandatory
11 minimum of 10 years with exposure up to life.  The Guidelines
12 themselves are very harsh in this regard.  The Guidelines
13 themselves have taken into account not only everything that
14 the Government has argued, but everything that the
15 Government's witness has testified about.
16           Mr. Facio receives an enhancement under 4B1.5 that is
17 massive, so the guidelines have considered all of this
18 information.  What we have heard here today is nothing new and
19 I would submit to the Court that the statute has accounted for
20 it and the Guidelines themselves have also accounted for it in
21 coming back with its advisory range.
22           Furthermore, when whenever look material Chapter 2G
23 Guidelines we all know that they are among the heaviest handed
24 guidelines in all of the sentencing guidelines.  This is not a
25 popularity contest.

1  We ask that the Court consider the many mitigating
2  circumstances in Mr. Facio's life.  He's an individual who
3  grew up without a father figure.  He's an individual who at a
4  very young age suffered severe head trauma, the effects of
5  which are still undiagnosed and unknown.  What we do know is
6  he has learning disabilities, he has speech disabilities that
7  he's had to overcome throughout his life.  He has had to
8  repeat at least four grades while going throughout school and
9  now at the time of the instant offense he was almost homeless.
10  Mr. Facio has shown the capacity to become a
11  productive member of society.  He's held down very tough jobs
12  working on the kill floor of a meat packing factory, washing
13  dishes at Cotton Patch Cafe, and being a cart pusher at
14  Wal-Mart.  With a lifetime of supervision and rehabilitation
15  Mr. Facio can get back to where he needs to be to where he is
16  not re-offending and where he can be a productive member of
17  society.
18  What the guidelines contemplate here today, Your
19  Honor, is not a modest sum and we would simply submit to the
20  Court that a bottom of the Guideline range punishment is
21  sufficient and not greater than necessary.
22  At this time, Your Honor, Mr. Facio would like to
23  address the Court.
24  **THE COURT**:  I would be pleased to hear from you.
25  **THE DEFENDANT**:  First, I want to apologize to you,

1  Judge, for the -- what I've done.  It's really, really bad.  I
2  also want to apologize to the family and, hopefully, they will
3  understand that I really did not mean to do this.  I -- I
4  can't talk.  I really cannot talk.  I'm sorry.  I -- I cannot
5  finish what I need to say.
6             **THE COURT**:  Okay.  Very good.  I will now state the
7  sentence determined pursuant to Title 18 U.S.C. § 3553,
8  treating the Sentencing Guidelines as advisory only.
9             In arriving at a reasonable sentence I have taken
10 into account primarily the conduct admitted in the Factual
11 Resume as well as those matters required to be considered by
12 3553.
13            This is an upward variance.
14            It will be the judgment of the Court that the
15 defendant is committed to the custody of the Federal Bureau of
16 Prisons for a period of 480 months.
17            I do not order a fine.
18            I waive the $5,000 assessment pursuant to 18 U.S.C.
19 3014.
20            I order a mandatory special assessment of $100.
21            I also determine that a term of supervised release of
22 10 years is warranted.
23            While on release you shall comply with the standard
24 conditions contained in this judgment as well as the mandatory
25 and special conditions stated herein.

1       Have you gone over those conditions with your client?
2       **MR. LEHMANN**: Yes, Your Honor. If I may approach,
3  I've got --
4       **THE COURT**: Yes. I will order those conditions
5  imposed in this case.
6       I believe that this is the appropriate sentence,
7  given all of the facts and circumstances, and that this
8  sentence is sufficient, but not greater than necessary, to
9  comply with the statutory purposes of sentencing.
10      The further basis is stated in the Government's
11 motion in this case.
12      The Probation Department has recommended an upward
13 departure under -- in paragraph 103. I think those reasons
14 support an upward variance in this case. They have also
15 mentioned in paragraph 104 that that might be the case as
16 well. But for the reasons stated by the Government in its
17 motion, I believe that this sentence is the only sentence I
18 think that can sufficiently protect the public from further
19 crimes of the defendant.
20      The defendant has admitted to the agent. The agent
21 testified here today that he was unable to control himself.
22 That is borne out by the facts in this case. Just a few of
23 the comments -- just a few of the points to make on that is
24 while in jail, as Ms. Saleem mentioned, the defendant sent a
25 letter to a 14 year old girl asking to be more than just

1  friends.  The defendant was violated -- violated his probation
2  by masturbating in public.  And then the other conduct in the
3  Presentence Report from paragraphs 35 to 41, in my view,
4  demonstrate why this is the only sentence that I think can
5  appropriately protect the public from further crimes of the
6  defendant.
7          Is there any objection from the Government?
8          **MS. SALEEM**:  No, Your Honor.
9          **THE COURT**:  From the Defense?
10         **MR. LEHMANN**:  Your Honor, for appellate purposes we
11  would object to the sentence as being procedurally and
12  substantively unreasonable.
13         **THE COURT**:  And I will overrule that for the reasons
14  that I've stated here.
15         Now, Mr. Facio, to the extent you have the right to
16  appeal you also have the right to apply for leave to appeal in
17  forma pauperis if you are unable to pay the costs of an appeal
18  and if you decide to appeal your notice must be filed within
19  14 days.  Please talk to Mr. Lehmann your appellate rights.
20         Anything else from the Government?
21         **MS. SALEEM**:  Yes, Your Honor.  The Government would
22  move to dismiss the original indictment in this case.
23         **THE COURT**:  That will be granted.  Anything else?
24         **MR. LEHMANN**:  Nothing further, Your Honor.
25         **THE COURT**:  Then we are in recess on this case.

1  Thank you both for being here.  Good luck to you.

*DENVER B. RODEN, RMR*
*United States Court Reporter*

1      I, **DENVER B. RODEN**, United States Court Reporter for the
2  United States District Court in and for the Northern District
3  of Texas, Fort Worth Division, hereby certify that the above
4  and foregoing contains a true and correct transcription of the
5  proceedings in the above entitled and numbered cause.
6      **WITNESS MY HAND** on this 11th day of October, 2017.

                                  /s/ Denver B. Roden

                                  **DENVER B. RODEN, RMR**
                                  *United States Court Reporter*
                                  5124 Breezewind Lane
                                  Fort Worth, Texas  76123
                                  *drodenrmr@sbcglobal.net*
                                  **Phone**:  (214) 753-2298